INTERBOROUGH RAPID TRANSIT COMPANY, Respondent, *v.* EDWARD P. LAVIN, Individually and as President of the CONSOLIDATED RAILROAD WORKERS' UNION OF GREATER NEW YORK, et al., Appellants.

**Injunction — labor unions — contract — basis of permissible action by courts in labor disputes — right of members of labor union to persuade workers to leave employment — agreement by members of brotherhood of workers of a public service corporation not to join another labor union while so employed not a contract between corporation and employees — understanding that all employees must join brotherhood and abide by its rules to retain employment — members of other unions may not be enjoined from attempting to induce employees to join their unions — injunction prohibiting same too broad.**

1. The basis of permissible action by courts in labor disputes is the probability of threatened and unjustified interference with rights of the plaintiff and that basis must be shown even where the public has an interest in the outcome. (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260, followed.)

2. Wrong may not be imputed to members of a labor union if they seek to further their own lawful interests and purposes by argument and persuasion intended to induce workers to quit their employment

or to join a union or association of other workers and through such union make collective demand for other terms of employment. Wrong begins, if at all, if they use unlawful means to carry out their purpose or perhaps if they attempt to induce the workers to conceal facts where concealment constitutes in effect deception, or to do other acts which contravene express or implied obligations to their employer upon which the employer has legal and equitable right to insist.

3. Upon a motion for an injunction *pendente lite* prohibiting defendants from inducing employees of plaintiff, a public service corporation, from leaving its employ, a claim that its workmen have agreed collectively that they will not join or become identified in any manner with an association with which defendants are identified and that defendants may not lawfully induce plaintiff's workmen to break this contract, is not justified by the facts that the plaintiff's employees had organized a brotherhood, the constitution of which provides that each newly employed person " shall upon appointment and as a condition of employment agree to join the Brotherhood " and take an obligation to remain a member thereof during the time of employment and not become identified in any manner with any other labor organization. The clearly expressed contractual obligation is between the brotherhood and each of its members and is not in terms or effect a contract between the plaintiff and the brotherhood or its members.

4. Where, therefore, the record does not show that the plaintiff exacted any express promise from any worker at the time he entered its employ to join the brotherhood and no other combination of labor, though it was understood that all workers must join the brotherhood and abide by the constitution to remain in plaintiff's employ, and were prohibited from joining the union with which defendants are identified, that union may, despite the prohibition, attempt to recruit its membership from plaintiff's employees, and may not be accused of malicious interference when it urges the employees to make their choice in its favor, even though the choice involves termination of their present employment and disruption of plaintiff's business. The injunction as issued, therefore, in so far as it prohibited the defendants from inducing the plaintiff's employees by lawful means to join their union, was beyond the power of the court.

*Interborough Rapid Transit Co.* v. *Lavin*, 220 App. Div. 830, reversed.

(Argued November 21, 1927; decided January 10, 1928.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 15, 1927, which affirmed an order of

Special Term granting a motion for an injunction *pendente lite*.

*Joseph Force Crater, Robert F. Wagner* and *Simon H. Rifkind* for appellants. In the absence of a valid contract of employment for a definite period not yet expired, equity will not enjoin a labor union from using peaceable means to induce workmen to cease working for plaintiff. (*Nat. Protective Assn.* v. *Cumming,* 170 N. Y. 313; *Foster* v. *Retail Clerks' Protective Assn.,* 39 Misc. Rep. 48; *Vail-Ballou Press, Inc.,* v. *Casey,* 125 Misc. Rep. 589; *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260; *Posner* v. *Jackson,* 223 N. Y. 325; *Lamb* v. *Cheney & Son,* 227 N. Y. 418; *Mills* v. *U. S. Printing Co.,* 99 App. Div. 605; *Bossert* v. *Dhuy,* 221 N. Y. 342; *Reed Co.* v. *Whiteman,* 238 N. Y. 545.) Plaintiff has failed to establish any contractual relation between it and its employees giving rise to any property rights with which defendants are interfering. (*McCabe* v. *Goodfellow,* 133 N. Y. 89; *Hale* v. *Hirsch,* 205 App. Div. 308; *Robinson* v. *Dahm,* 94 Misc. Rep. 729; *Haebler* v. *N. Y. Produce Exch.,* 149 N. Y. 415; *Bellon* v. *Hatch,* 109 N. Y. 593; *Burns* v. *Manhattan, etc., Soc.,* 102 App. Div. 467; *Sheldon* v. *George,* 132 N. Y. 470; *Howland* v. *Lounds,* 51 N. Y. 604; *Fitch* v. *Snedaker,* 38 N. Y. 248.) Plaintiff is not a party to the agreement between the employee and the brotherhood, nor is plaintiff the third person beneficiary of that agreement. (*Fosmire* v. *National,* 229 N. Y. 44; *Nat. Bank* v. *Grand Lodge,* 98 U. S. 123; *Simson* v. *Brown,* 68 N. Y. 355; *Wheat* v. *Rice,* 97 N. Y. 296; *Embler* v. *Hartford Steam Boiler Ins. Co.,* 158 N. Y. 431; *Garnsey* v. *Rogers,* 47 N. Y. 233; *Pardee* v. *Treat,* 82 N. Y. 385; *Lockwood* v. *Smith,* 81 Misc. Rep. 334; *Leary* v. *N. Y. C. R. R. Co.,* 212 App. Div. 689.) In any event the injunction as granted is unduly broad in scope and requires modification. (*Hitchman Coal & Coke Co.* v. *Mitchell,* 245 U. S. 229; *Bossert* v. *Dhuy,* 221 N. Y. 342; *Kissam*

v. *U. S. Printing Co.*, 199 N. Y. 76; *Jacobs* v. *Cohen*, 183 N. Y. 207; *Mills* v. *U. S. Printing Co.*, 99 App. Div. 605; *Sun Printing Association* v. *Delaney*, 48 App. Div. 623.) The injunction should have been denied because of ·the lack of clear and convincing proof of the right thereto. (*Gambrill Mfg. Co.* v. *Am. Foreign Bank Corp.*, 194 App. Div. 425; *Maloney* v. *Kalzenstein*, 135 App. Div. 224; *Grimm* v. *Krahmer*, 112 App. Div. 489; *Cohen* v. *United Garment Workers*, 35 Misc. Rep. 748; *Russell & Sons* v. *S. & G. L. Local Union*, 57 Misc. Rep. 96; *Reynolds* v. *Everett*, 144 N. Y. 189; *Butterick Pub. Co.* v. *Typographical Union*, 50 Misc. Rep. 1.)

*James L. Quackenbush, Louis S. Carpenter* and *Albert J. Kenyon* for respondent. The order appealed from should be affirmed and the question certified answered in the affirmative, if the order granting the injunction *pendente lite* was deemed necessary or warranted either in the exercise of judicial discretion as a means of preserving the *status quo*, or in order to safeguard the public interest. (*Young* v. *R. & K. Gas Light Co.*, 129 N. Y. 57; *City of Rochester* v. *Bell Telephone Co.*, 52 App. Div. 6; *Third Ave. Ry. Co.* v. *Shea*, 109 Misc. Rep. 18; *Sultan* v. *Starr Co., Inc.*, 106 Misc. Rep. 43; *People* v. *Federated Radio Corp.*, 216 App. Div. 250; 244 N. Y. 33; *Gottlieb* v. *Matchin*, 117 Misc. Rep. 128; *Dailey* v. *City of New York*, 170 App. Div. 267; 218 N. Y. 665; *Knoth* v. *Manhattan Ry. Co.*, 109 App. Div. 802; 187 N. Y. 243; *Health Dept. of the City of New York* v. *Purdon*, 99 N. Y. 237; *Blake* v. *Greenwood Cemetery*, 14 Blatch. 341.) The defendants were and are seeking and threatening to destroy the Brotherhood of Interborough Rapid Transit Company Employees, the established method of collective bargaining between plaintiff and its employees, the good will, loyalty and efficiency of plaintiff's employees, and to induce the entire body of plaintiff's employees to break their contracts of employment and

to strike by concerted action, thereby causing serious,
continuous and irreparable injury to the plaintiff; and
they are also threatening to interrupt, suspend and
irretrievably impair the public service which plaintiff is
rendering daily to millions of the inhabitants of the city
of New York, thereby endangering the public interest
and the rights, property and interests of the city of
New York. (*Hitchman Coal & Coke Co.* v. *Mitchell,*
245 U. S. 229; *Bittner* v. *W. Va.-Pittsburgh Coal Co.,*
15 Fed. Rep. [2d] 652; *Kinlock Telephone Co.* v. *Local
Union,* 275 Fed. Rep. 241; *Montgomery* v. *Pacific
Electric Ry. Co.,* 293 Fed. Rep. 680; *Eagle Glass Mfg.
Co.* v. *Rowe,* 245 U. S. 275; *American Foundries* v. *Tri-
City Central Council,* 257 U. S. 184; *Reed Co.* v. *Whiteman,*
238 N. Y. 545; *3d Ave. Ry. Co.* v. *Shea,* 109 Misc. Rep.
18; *Auburn Draying Co.* v. *Wardell,* 227 N. Y. 1; *Posner*
v. *Jackson,* 223 N. Y. 325; *Flaccus* v. *Smith,* 199 Penn.
St. 138; *Grassi Contracting Co.* v. *Bennett,* 174 App. Div.
244; *Schlesinger* v. *Quinto,* 201 App. Div. 487; *Altman*
v. *Schlesinger,* 204 App. Div. 513; *United Shoe Machinery
Co.* v. *Fitzgerald,* 237 Mass. 537.)   The plaintiff's right
to injunctive relief against interference with its contracts
of employment cannot be denied upon the ground that
the contractual obligations are not fixed by agreements
having a definite or limited time to run.   (*Reed Co.* v.
*Whiteman,* 238 N. Y. 545.)   The contracts of employment
between the plaintiff and its employees do not involve
consideration of the doctrine of *Lawrence* v. *Fox;* the
plaintiff is a principal party to its contracts and does not
claim any rights as a third party beneficiary thereunder;
but, in any event, the plaintiff is entitled to the full
benefits of the contracts in question.   (*Hitchman Coal &
Coke Co.* v. *Mitchell,* 245 U. S. 229; *First Nat. Bank of
Sing Sing* v. *Chalmers,* 144 N. Y. 432; *Hamilton* v. *Hamil-
ton,* 127 App. Div. 871; *Watkins* v. *Reynolds,* 123 N. Y.
211; *Gifford* v. *Corrigan,* 117 N. Y. 257; *Knowles* v.
*Erwin,* 43 Hun, 150; 128 N. Y. 633; *Seaver* v. *Ransom,*

224 N. Y. 238; Brantly on Contracts [2d ed.], 253; *Formire* v. *Nat. Surety Co.*, 229 N. Y. 48.)

LEHMAN, J.   The plaintiff is a public service corporation.   It operates a system of rapid transit railroads in the city of New York consisting of approximately one hundred and thirty-eight miles of elevated railroad and two hundred and forty-four miles of subway railroad. It is said that it transports over three million passengers daily on approximately nine thousand trains.   It is evident that the general public of the city of New York is interested in the safe, efficient and unbroken operation of this great instrument for the transportation of passengers.

In 1916 there was a general strike of the employees operating the subway and elevated lines of the plaintiff. After the strike was ended a voluntary unincorporated association was formed under the name of the " Brotherhood of Interborough Rapid Transit Company Employees."   Substantially the whole body of employees of the plaintiff joined the brotherhood.   The members of the brotherhood adopted a constitution which was submitted to and approved by the board of directors of the plaintiff at a meeting held on August 30th, 1916. Thereafter the brotherhood prepared a new constitution which was submitted to and approved by the board of directors of the plaintiff at a meeting held on April 6th, 1920.   That constitution is now in full force and effect. By its terms the constitution may be amended by a two-thirds vote of the members of the general committee at a regular meeting, provided that certain preliminary formalities have been complied with.

The constitution provides (section 9): " The General Committee shall be vested with the power at all times to promote the welfare of the members of the Brotherhood and of the Company by amicable adjustment of all questions as to wages and working conditions that may

arise from time to time.　Section 10: The decision of the General Committee in all controversies between the Brotherhood and the Company shall be final."

On June 30th the secretary of the brotherhood sent to Mr. Frank Hedley, the plaintiff's president and general manager, a letter: " I am instructed by the general committee to confirm in writing, the understanding arrived at at the conference held at our office, Wednesday, June 30th, at which conference it was agreed by the committee on behalf of our members, to allow wages and working conditions to remain 'As Is ' for one year beginning July 1st, 1926."　Mr. Hedley acknowledged this communication in a letter dated the same day stating: " I am in receipt of your letter of June 30th, 1926, confirming by direction of the General Committee, the understanding reached at a conference held at this office on Wednesday, June 30th, 1926, to the effect that wages and working conditions would remain as then existing for one year, beginning July 1st, 1926.　This will confirm such understanding on the part of the management of the Company."

At that time the defendants Lavin, Bark, Phelan and Walsh were employees of the plaintiff and members of the general committee of the brotherhood.　Under the constitution of the brotherhood the employees of the plaintiff company were grouped according to the nature of their work and the place the work was performed.　Each group constituted a local of the brotherhood.　On July 1st, 1926, at the instigation of the defendants Lavin, Bark and Phelan, a meeting of the members of Local No. 7 of the transportation department, consisting of motormen and switchmen employed in the subway division of plaintiff's railroad system, was held.　By a vote of 579 against 7 the members rejected a proposal that the wages and working conditions of the plaintiff's employees should remain unchanged.　The defendants Lavin, Bark and Phelan made speeches at that meeting urging that those present should withdraw from the brotherhood and should

form a new organization called by these defendants the Consolidated Railroad Workers Union of Greater New York. On the following day the defendants Lavin, Bark and Phelan, purporting to represent the men present at the meeting, delivered to Hedley, plaintiff's president and general manager, a written communication containing a demand for recognition of the Consolidated Railroad Workers of Greater New York and for a wage increase to one dollar per hour for motormen and seventy-five cents per hour for switchmen. It concluded with the words: " In the event that the above is not agreed to by you representing the I. R. T. Company by six (6) P. M. Saturday July 3d, 1926, these men will cease work at 12.01 A. M. on Tuesday, July 6th, 1926." On July 6th a strike on plaintiff's railroad lines, induced by Lavin, Bark and Phelan began and lasted till July 30th, 1926, causing a large financial loss to the plaintiff. The four individual defendants were leaders in the strike. After the strike was ended they were not employed by the defendant. By various means they have urged and are urging employees of the plaintiff corporation to become members of the Amalgamated Association of Street and Electric Railway Employees of America. They are trying to induce these employees to believe that they will be able to secure better pay and conditions of employment through demands made on their behalf by the Amalgamated Association than under the present system of bargaining by the brotherhood.

The plaintiff has brought this action to secure an injunction which would in effect prohibit the defendants from inducing the plaintiff's employees by lawful or unlawful means from leaving the plaintiff's employ. The complaint also asks damages for past acts. Upon motion by the plaintiff an injunction in broadest terms has been granted *pendente lite*. Leave to appeal has been granted by the Appellate Division and the question certified: " Do the facts pleaded and the facts stated in

the moving papers, and the public interest, justify, in the exercise of judicial discretion, an injunction *pendente lite* as prayed for or any part thereof? "

Some of the " facts pleaded and the facts stated in the moving papers " are denied by defendants. Upon a motion for an injunction *pendente lite*, a substantial denial of a material allegation in the moving papers may become a decisive factor in the exercise of judicial discretion. In view, however, of the form of the question certified, we shall disregard all denials, at least until we have determined whether the allegations contained in the moving papers are in law sufficient to sustain the injunction.

Where there is proof of threatened wrong which the courts have power to enjoin, there may be room for the exercise of a sound judicial discretion in the determination of whether that power should be exercised. If the moving papers show that the defendants have done and are threatening to do acts which constitute a wrongful interference with, and disturbance of the relations existing between the plaintiff and its employees, doubtless the public interest in the safe, efficient and uninterrupted operation of the plaintiff's railway system might be a consideration of some weight in determining whether an injunction should issue. In the recent case of *Exchange Bakery & Restaurant, Inc., v. Rifkin* (245 N. Y. 260), we have pointed out that the basis of permissible action by the court in labor disputes, as in other situations, is the probability of threatened and unjustified interference with rights of the plaintiff. That basis must be shown even where the public has an interest in the outcome.

The relations of the plaintiff and its employees are based on consent. Each has freedom of contract. The plaintiff has not entered into any contracts with the individual workers which binds the plaintiff to employ them for any definite period. The employees are not bound to continue in the plaintiff's employ longer than

they desire. Employment is terminable at the will of either party at a moment's notice. We speak now only of those relations which according to the allegations of the moving papers existed at the time the injunction was granted. We do not pass upon the effect of new arrangements which, the plaintiff's brief suggests, have been made since that time. Possibly they might present other questions than those which may be raised upon the present record.

The operation of the plaintiff's railway requires a great organization. The affidavits show that it employs about fourteen thousand men. Some of these employees require peculiar skill and training. If they leave the plaintiff's employ it may be difficult for the plaintiff to replace them. If the workers leave simultaneously in large numbers, doubtless this difficulty in finding others to fill their places would interfere, at least for a time, with the operation of plaintiff's railways and cause the plaintiff great loss.

The plaintiff may doubtless determine for itself the conditions of employment upon its railways which will in its opinion best assure its own interests and the interests of the public, provided it can induce sufficient workers to accept these conditions. It may refuse to employ workers who will not accept a condition or make an agreement that they will not join a particular union or combination of workers while in the plaintiff's employ. Doubtless such a condition, if imposed and accepted, lessens the power of the workmen to compel an employer to meet demands of the workers. The workmen may refuse to accept employment based on such conditions or on any other conditions which the employer chooses to impose. Demands of workmen may sometimes be fair and sometimes unfair. Combinations give the workmen a power of compulsion which may work harm to their employer, the public and even to themselves. Where the workmen do not combine they may be compelled by

force of economic circumstances to accept unfair terms of employment. Such conflicting considerations of economic policy are not primarily the concern of the courts. Freedom of contract gives to workers and employers the right to fix by individual or collective bargaining the terms of employment acceptable to both. Unless the workers have by agreement, freely made, given up such rights, they may without breach of contract leave an employment at any time separately or in combination, and may demand new terms of employment which in turn must be fixed by bargain.

In this case the plaintiff claims that its workmen have agreed collectively that they will not join or become identified in any manner with the Amalgamated Association of Street and Electric Railway Employees of America or with any other association of railway or other employees, and that the defendants may not lawfully induce the workmen to break this contract. The assertion in the moving papers that such a contract has been made constitutes only a conclusion. The facts shown must be examined to determine whether the conclusion is justified.

The constitution of the brotherhood provides that employees of the company, except officials and persons having power of discipline, shall be eligible to become members of the brotherhood, and that " Beginning February 1st, 1920, each newly employed person who is eligible for membership in the Brotherhood shall upon appointment and as a condition of employment, agree to join the Brotherhood and to accept its obligations. Such persons, however, shall only be eligible to become members of the Brotherhood after having worked thirty days." In another section, provision is made that all applicants for membership in the brotherhood " shall take the obligation" as appearing in Appendix A "to the constitution." That obligation reads as follows: " In conformity with the policy adopted by the Brotherhood and consented to by the Company, and as a condition of

employment, I expressly agree that I will remain a member of the Brotherhood during the time I am employed by the Company and am eligible to membership therein; that I am not, and will not become identified in any manner with the Amalgamated Association of Street and Electric Railway Employees of America, or with any other association of street railway or other employees, with the exception of this Brotherhood, and the Voluntary Relief Department of the Company while a member of the Brotherhood or in the employ of the Company, and that a violation of this agreement or the interference with any member of the Brotherhood in the discharge of his duties or disturbing him in any manner for the purpose of breaking up or interfering with the Brotherhood shall of itself constitute cause for dismissal from the employ of the Company."

Here we have a clearly expressed contractual obligation between the brotherhood and each of its members. True, that contractual obligation may be terminated by any member by withdrawal from the plaintiff's employ, with consequent separation of the company brotherhood. That circumstance does not, however, detract from its binding force, as long as membership in the brotherhood continues. We are here not concerned with the rights of the brotherhood, but with rights asserted by the employer. Question still remains whether the workers have assumed similar obligation to the plaintiff.

That question is not free from doubt. The constitution of the brotherhood was submitted to the approval of the directors of the plaintiff corporation before it became effective. That circumstance suggests that it was intended that the terms of the constitution should become a binding contract between the plaintiff and the brotherhood and its members. Some of the provisions of the constitution too give apparent force to the suggestion. On the other hand, the provision of the constitution that it may be amended by a two-thirds vote

of the general committee of the brotherhood, and the absence of provision that changes so made must be approved by the plaintiff, tends to negative any conclusion that the constitution was intended as a contract with plaintiff, and there are other provisions of the constitution which it is difficult to believe that the company intended should be binding upon it.

Undoubtedly the primary purpose of the constitution was to create a form of combination of workmen which would be acceptable to the plaintiff and with which it would be willing to deal in arranging wages and terms of employment. The constitution must be submitted to plaintiff's approval so that the plaintiff should be able to determine whether it would accept the combination so formed. The plaintiff's officers perhaps had their own views as to the nature of the combination which would effect the best results. These views may be reflected in the constitution of the brotherhood. So long as the members of the brotherhood abided by its terms and joined no outside union or combination, the plaintiff might rest secure that collective demands of its workers would be formulated by them alone and that in collective bargaining the workers would be represented by members of the general committee of the brotherhood who were themselves in the plaintiff's pay and employ. Perhaps the plaintiff preferred that the brotherhood should have real or apparent independence rather than be bound to it by contract or other ties than mutual advantage. The constitution of the brotherhood is not in terms or effect a contract between the plaintiff and the brotherhood or its members, but a factor recognized by both sides in the relations of the employer and employed.

The plaintiff might ban from its employ all who would not abandon, as a condition of employment, their privilege of joining any union or combination of workmen. It preferred to employ men who would become members of a company brotherhood whose constitution had been

approved by it. The record does not show that the plaintiff exacted any express promise from any worker at the time he entered its employ to join the brotherhood and no other combination of labor while in its employ. Undoubtedly it was understood that all workers must join the brotherhood and abide by its constitution if they remained in plaintiff's employ. The distinction is a close one between such an understanding and an actual contract. In this case such distinction has, perhaps, no practical effect. All knew that failure to abide by the understanding must result in discharge and that, as long as the employment continued, the brotherhood was the only association which might voice the collective demands of the employees.

The organization of a working force of 14,000 men to operate the plaintiff's great railway system is a considerable accomplishment. It constitutes a significant factor in the value of the plaintiff's going business. The plaintiff's employees may have the right to leave that organization singly or in combination, yet interference with that organization by an officious outsider, merely for the purpose of injuring the plaintiff, or inducement maliciously held out to the employees to leave the organization might constitute a wrong which the courts would have power to remedy. (*Beardsley* v. *Kilmer,* 236 N. Y. 80.) The defendants do not contend otherwise. They maintain that in the present case they are endeavoring to accomplish a lawful purpose by lawful means, and that they are not acting maliciously.

The individual defendants are former employees of the plaintiff whose employment has been terminated because they instigated a concerted demand for change of conditions of employment. A combination of employees for such purpose is not unlawful, and even after an employee has left or been discharged he may continue efforts to effect such a combination, for the purpose of regaining employment upon conditions satisfactory to

1928.]                    Opinion, per LEHMAN, J.              [247 N. Y. 65]

him. The defendants now, apparently, are working in behalf of the Amalgamated Association of Street and Electric Railway Employees of America. Though the plaintiff's employees are prohibited by the plaintiff from joining that association or union, the union may, despite the prohibition, attempt to recruit its membership from those employees, at least where the prohibition is not part of a contract of employment for a definite term. " It may be as interested in the wages of those not members, or in the conditions under which they work as in its own members because of the influence of one upon the other." (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin, supra.*) Collective bargaining by an association limited to employees of one company; prohibition by an employer against joining other labor associations may weaken or indeed threaten the existence of a general labor union. The union may argue the greater effectiveness of its own methods, the validity of its own principles. Where employees have freedom of choice, a labor union may not be accused of malicious interference when it urges the employees to make that choice in its favor, even though that choice may involve termination of present employment and consequent disruption of a business organization. This court has not yet been called upon to decide whether employees may lawfully be urged to make a choice in breach of a definite contract. We do not decide that now. At least so far as the injunction prohibits the defendants from inducing the plaintiff's employees to leave their positions and to terminate their employment, it is not justified upon this record.

The defendants have, however, gone farther. They have urged the plaintiff's employees to join the Amalgamated Association secretly, and to conceal their new affiliations from their employer while remaining in its employ. It may be that such action on their part goes beyond the limits of permissible interference by an outsider in the relations between employer and employee.

The plaintiff has made its choice to employ none who are members of other labor associations than the brotherhood. The defendants have the right to induce the plaintiff's employees to join the Amalgamated Association though that may involve termination of their employment. They are under no obligation to the plaintiff to inform it that some of the plaintiff's employees are joining the union, so that the plaintiff may exercise its choice of retaining or discharging the new members. They are not under any obligation even to urge or compel their new members to give their employer such information. The defendants are acting for themselves or the Amalgamated Association, and in taking lawful action to advance the interests of the members of that union they are under no affirmative duty of protecting the privileges or even rights of the plaintiff.

A more doubtful question is whether the defendants may not be under a duty to refrain from urging the plaintiff's employees to *conceal* from their employer that they are acting contrary to their employer's expressed wish, if not command. Employment by the plaintiff is based upon the understanding that its employees are members of the brotherhood and abide by its rules. Membership in that association is not merely an inducement to employment; it constitutes an important factor in the relationship of employer and employed. The advice by the defendants to the employees to conceal their membership in the Amalgamated Association can have but one purpose: to induce the plaintiff through such concealment to continue an employment it would otherwise terminate. Exercise by the plaintiff of the privilege of freedom to discharge is to be nullified by concealment of the fact that the employees are acting contrary to the understanding upon which they were originally employed, though if such fact were known it would result in discharge by the plaintiff. Continuation of employment induced by such concealment is calculated

to result in undermining the company brotherhood and in the substitution for it of another association of workers with power to compel the plaintiff to accept its demands. Even though we should assume, without deciding, that the plaintiff's employees are themselves not under a contractual or other legal obligation to court discharge by information to the plaintiff that they are joining the Amalgamated Association, the question would still remain whether the defendants are justified in urging the employees to *conceal* facts which, if disclosed, would lead inevitably to their discharge. That question has not been argued on this appeal. We do not answer it now. Many factors must enter into its solution. Not all appear in this record. We merely state the question to point out that we are in no wise determining it.

Though we have decided that the defendants may not be enjoined from inducement by lawful means to leave the service of the plaintiff or to join an organization of employees other than the brotherhood or to make demands upon the plaintiff for increased wages, yet even such purposes may not be effected by unlawful means. In labor disputes, as in all other disputes, the courts may and should restrain acts which are themselves unlawful, regardless of the purpose of the acts. The defendants may not without the permission of the plaintiff enter upon the plaintiff's property or place any signs thereon for the purpose of inducing even lawful action on the part of the employees. That would constitute a trespass. The defendants may not achieve their purpose through malicious falsehood and deceit. They may not use force or intimidation. They may not injure or deface the plaintiff's property. The injunction includes prohibition of all such acts, and to that extent it is justified if the record shows that such acts are threatened. We shall not extend this opinion by analysis of the record upon that point. There is some evidence of threatened tres-

6

pass; perhaps there is also some evidence. even though slight, of other threatened wrongs. Though the court at Special Term would have been justified in issuing an injunction against any threatened use of unlawful means even to achieve a lawful end, and though we leave open the question of whether the defendants may be enjoined from inducing the plaintiff's employees to conceal from the plaintiff that they had joined the Amalgamated Association, the injunction as issued, in its broad scope, was beyond the power of the court. Under these circumstances the orders should be reversed and the motion remitted to the Special Term in order that it may exercise its discretion as to whether an injunction of more limited scope should issue, upon the facts contained in this record.

Both parties have upon this appeal cited decisions, most of them from other jurisdictions, which they urge support certain of their contentions. Some of the opinions in these cases are of great weight because of the strength of the reasoning and the authority of the tribunals. The law that should be applied in this jurisdiction to the circumstances disclosed by the record has been established by repeated decisions of this court. Difficulty, if any, lies in the application of established rules of law to particular facts. Attempt by analysis to reconcile or distinguish decisions where other courts have passed upon a state of facts in which analogy is more or less complete would be futile. It might even tend to confusion or deduction of rules which are rigid or arbitrary. In this State the courts may interpose their mandates between contesting parties only where there is attempt to effectuate an unlawful purpose, or to effectuate a lawful purpose by unlawful means. The privilege of freedom of contract may not be destroyed by force or fraud. Against the threatened use of such means the courts must exercise their full powers unflinchingly. Business and property rights in their broadest sense

should be immune from malicious interference. They rest upon established principles of law; they are subject to attack within limits fixed by law. The plaintiff in the exercise of its lawful rights and to accomplish a lawful purpose has built up a great organization of workers who are willing to remain at work as long as the conditions of their work are satisfactory to them. No outsider may maliciously destroy the plaintiff's freedom of choice of the men it will employ and of the conditions of employment. No outsider may maliciously destroy the workers' freedom of choice whether they will accept and continue the employment offered to them. Wrong may not be imputed to the defendants if they seek to further their own lawful interests and purposes by argument and persuasion intended to induce the plaintiff's workers to quit their employment or to join a union or association of other workers and through such union make collective demand for other terms of employment. Wrong begins, if at all, if the defendants use unlawful means to carry out their purpose or perhaps if they attempt to induce the plaintiff's workers to conceal facts where concealment constitutes in effect deception, or to do other acts which contravene express or implied obligations to their employer upon which the employer has legal and equitable right to insist.

The question certified should be answered to the effect that an injunction for some part of the relief prayed for is justified by the record and the order of the Appellate Division and that of Special Term should be reversed, without costs to either party, and the motion remitted to Special Term to proceed in accordance with this opinion.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.