INTERBOROUGH RAPID TRANSIT COMPANY, Plaintiff, *v.* WILLIAM GREEN, Individually and as President of the AMERICAN FEDERATION OF LABOR, and Others, Defendants.

Supreme Court, New York County, February 15, 1928.

**Trade unions — employment contract — agreement by members of brotherhood of employees of street railway corporation by which employees agreed to work for corporation for two years and not to join another labor union while so employed — agreement lacks consideration where corporation had unlimited power to discharge employees — contract inequitable — injunctions — application for injunction pendente lite restraining defendants from inducing employees to leave plaintiff's employment and from committing threatened wrongs — injunction denied in absence of proof that violence, threats or fraud have been used.**

On this application for an injunction *pendente lite* restraining defendants from inducing employees of plaintiff, a street railway corporation, from breaking

a contract of employment between a brotherhood of plaintiff's employees and the individual members thereof, and leaving plaintiff's employ, a claim that there was ample consideration for the contract under which said employees agreed that they would work for the plaintiff for a period of two years and not join another labor union while so employed is not substantiated by the facts, where not only is there unlimited power to discharge employees given to the corporation but the provisions of the contract are inequitable.

Nor are the allegations of the complaint and the affidavits submitted on this motion sufficient to show threatened wrong and irreparable injury so as to warrant the issuance of an injunction *pendente lite*, particularly where it has not been established that any violence, threats, fraud or overreaching conduct has been used to induce plaintiff's employees to become members of a labor union or that other acts have been committed or threatened which would warrant the issuance of an injunction.

MOTION by plaintiff for injunction *pendente lite*.

*James L. Quackenbush* [*Louis S. Carpenter* of counsel], for the plaintiff.

*Blau, Perlman & Polakoff* [*Robert F. Wagner, Nathan D. Perlman, Joseph F. Crater, Herman Oliphant, Simon H. Rifkind*, and *Samuel Mezansky* of counsel], for the defendants.

WASSERVOGEL, J.    Plaintiff, upon notice duly given to defendants, seeks to enjoin them *pendente lite* from various acts claimed to be illegal and in violation of an alleged contract between the Brotherhood of the Interborough Rapid Transit Company and the individual members thereof, employees of plaintiff.   Plaintiff is a common carrier of passengers, operating its system of rapid transit railroads in the city of New York.   The Brotherhood of Interborough Rapid Transit Company Employees was organized in 1916, after a strike of plaintiff's employees.   The present membership of the Brotherhood is approximately 14,000 persons, all employees of plaintiff.   The Brotherhood, otherwise referred to by the parties as the " company union," adopted a constitution which was submitted to and approved by plaintiff's board of directors. On June 30, 1927, a contract was entered into between plaintiff and the Brotherhood " acting by and through the general committee thereof on behalf of the members of the Brotherhood now employed and hereafter to be employed by the company during the term of this agreement."   By the terms of this contract the company agreed to employ the members of the Brotherhood, and the Brotherhood, in behalf of such members, agreed that they would work for the company for a period of two years from April 30, 1927, upon certain conditions therein set forth.   Each of plaintiff's employees was required to and did sign an instrument in form as follows:

" I hereby declare that I have read, or heard read, the collective

bargaining and arbitration agreement entered into between Interborough Rapid Transit Company and the Brotherhood of Interborough Rapid Transit Company employees, dated the 30th day of June, 1927, and I hereby ratify and approve the same and each and every provision thereof; and in consideration of my employment by the company until and including the 30th day of April, 1929, upon the terms and conditions therein set forth, I hereby covenant and agree with said company and Brotherhood that I will remain in the employ of said company until and including the 30th day of April, 1929, unless in the meantime by mutual consent my employment is sooner terminated; and, as a condition of my said employment, I further covenant and agree that I will remain a member of the Brotherhood and faithfully observe the constitution, rules, and obligations thereof during the period of my employment, and that I am not now and during the period of my employment I will not become a member of or identified in any manner with the Amalgamated Association of Street and Electric Railway Employees of America, or with any other organization of street railway or other employees, or with any other labor organization, excepting the said Brotherhood and except as provided in said agreement dated June 30, 1927, between the company and the Brotherhood.

" I agree further to and with the company and the Brotherhood that the constitution as now amended, which I hereby ratify and approve, or as it may hereafter be amended, with the consent of the company, shall constitute a contract between the Interborough Rapid Transit Company and the Brotherhood, binding upon me and that my employment and performance of services hereunder shall be deemed to be sufficient evidence of the acceptance of this agreement by the Interborough Rapid Transit Company as a binding contract between the company and myself.

" Dated this 30th day of June, 1927."

The complaint alleges that defendants Coleman and Shea, with notice of the aforesaid two-year contract of employment and arbitration, willfully and maliciously began to serve upon the plaintiff demands for recognition of the Amalgamated; that they continued their campaign to organize the plaintiff's employees; that they planned to call a strike on July 26, 1927, but after conferring with the mayor of the city of New York announced an abandonment of the strike; and that since that time, by various methods set forth in the complaint, the defendants have been continuing their efforts to organize the employees of the plaintiff as members of the Amalgamated.

The complaint also alleges that the defendants agreed among themselves to destroy company unions and the contractual relations

existing between them and employers; that defendant Phelan and others instigated and carried on an unlawful strike among the employees of plaintiff; that in August and September, 1926, the defendant Mahon and others conspired among themselves to destroy the Brotherhood and induced plaintiff's employees to become members of the Amalgamated; that in September, 1926, the defendants created Division No. 977 of the Amalgamated and have since been engaged in carrying on a campaign to induce plaintiff's employees to break their contracts of employment and obligations to the Brotherhood and to become members of the Amalgamated by various means, including personal interviews, the use of threatening and abusive language, the circulation of scurrilous and defamatory reports and by inducing plaintiff's employees to secretly violate their contracts of employment and become members of the Amalgamated while continuing in the service of the plaintiff and ostensibly remaining faithful to their obligations as members of the Brotherhood.

It is further alleged that the plaintiff has already been damaged to the extent of $130,000; that the plaintiff has property rights protected by the Federal and State Constitutions that are being threatened by the defendants, and the complaint asks for a judgment restraining defendants from persuading the employees of the plaintiff to break their contracts of employment and committing various acts therein set forth, and also awarding plaintiff damages.

Defendants in their amended answer substantially deny all the material allegations of the complaint and set up certain defenses, largely to the effect that the two-year contract of employment is void and unenforcible by reason of alleged fraud, deception, duress, and overreaching conduct on the part of plaintiff. The material allegations in affidavits submitted in support of the complaint are also denied.

Upon the argument of this motion it appeared that the situation here presented is substantially the same as was that in the *Lavin* case recently decided by the Court of Appeals (*Interborough Rapid Transit Co.* v. *Lavin*, 247 N. Y. 65), *except* that in the *Lavin* case the contract involved was one " at will," whereas in the instant case the contract is claimed to have a definite term of two years, and is otherwise different in form.

While plaintiff claims that the present contract involves mutual rights and obligations and was, therefore, made upon ample consideration, it is the contention of defendants that it is without consideration and because of the conditions to which it was made subject, should fail in equity. Defendants call attention to the fact that the separate ratifying instrument (*supra*) is signed by the

employees, and does not contain any promise by the company to employ the men for any period of time; that it was not executed by the company, and any promise of the company to employ the men for a period of two years must come through the general committee of the Brotherhood, which by the terms of the constitution of the Brotherhood had the power to bind the men. Assuming, however, that the promise contained in clause 1 of the contract between the company and the Brotherhood with respect to an employment of two years was actually made by the company to the men, it seems to me that such promise is practically made valueless to the employees by clauses 5 and 6 of this contract which provide:

" 5. Anything herein to the contrary notwithstanding the company may discharge and terminate the employment of any employee for the following reasons:

" (a) For joining or being a member, or agreeing to join in the future, or becoming identified with in any manner, or agreeing to become identified in any manner in the future with the Amalgamated Association of Street and Electric Railway Employees of America or any other labor organization other than the Brotherhood, except as provided in paragraph 7 hereof.

" (b) In case any member shall be expelled from the Brotherhood for violating any of the terms of this agreement, or for violating any provisions of the constitution or obligations of the Brotherhood, or any agreement contained in said constitution of the Brotherhood, provided the company is satisfied that he was so expelled for such cause.

" (c) For incompetency, inefficiency, or carelessness in the performance of duty, or for intoxication or the use of alcoholic beverages, or for dishonesty, insubordination, or refusal or neglect or physical incapacity to perform his duty.

" Except as to questions of discharge provided in subdivisions (a) and (b) of this paragraph 5, and questions of discharge for dishonesty, insubordination, or refusal or neglect or physical incapacity to perform his duty, *of which the management of the company shall be the sole judge,* the general committee of the Brotherhood, or its officers, shall be entitled to take up and confer with the management respecting such discharge, and in case of disagreement the provisions of the constitution of the Brotherhood as to arbitration shall apply to such discharge.

· " 6. Notwithstanding any provision herein contained, the company retains the right, at any time, to suspend or terminate the employment of any member of the Brotherhood, whenever his services shall be rendered unnecessary by reason of the adoption of any new device or the extension of the use of any existing device or

whenever his services shall be rendered unnecessary by reason of any change in economic conditions or the seasonal requirements of the company. The company agrees, however, in all cases before suspending or terminating the employment of any member of the Brotherhood, whenever it may be reasonably possible, to transfer any such employee to some other department of the service, providing he is competent to do the work; and, in the event that such suspension or termination shall be found necessary, any such employee shall be placed automatically upon a preferred list for re-employment whenever the needs of the company shall require additional employees of his class. Any such suspension or termination of employment, however, shall be the subject of conference and review as provided in the constitution of the Brotherhood, and, in case of disagreement, of arbitration as therein provided."

Unlimited and practically unhampered power to discharge employees is given to the company. Even as regards the causes of discharge listed as arbitrable, as, whenever the services of the employee " shall be rendered unnecessary by reason of any change in economic conditions or the seasonal requirements of the company," or " by reason of the adoption of any new device or the extension of the use of any existing device," arbitration here would merely establish that the causes exist and that, therefore, the company may discharge. The contract purports to bind the employee for two years, while the employer is not in substance subject to a reciprocal obligation. Where an employee abandons all right to leave the service of his employer, whereas the employer reserves practically entire freedom to discharge him, there is no compensating consideration.

Whatever the status of the contract at law, the provisions above referred to are, to say the least, inequitable. The term of the contract is, in effect, controlled by the will of the employer and plaintiff is, therefore, in no better position than it was in the *Lavin* case. Not only the employees, but also the third parties made defendants in this case may, in a court of equity, avail themselves of the defense interposed.

In the view that I have taken of the contract it only remains to determine whether the commission of, or threat to commit, such acts on the part of defendants has been established as would justify a court of equity to intervene.

Plaintiff claims that the allegations of the complaint and the affidavits submitted in its behalf are sufficient to show threatened wrong and irreparable injury to warrant the issuance of the restraining order here sought. Its learned counsel has properly urged, and as a matter of fact it was held in the *Lavin* case, LEHMAN, J.,

writing, that " Where there is proof of threatened wrong which the courts have power to enjoin, there may be room for the exercise of a sound judicial discretion in the determination of whether that power should be exercised. If the moving papers show that the defendants have done and are threatening to do acts which constitute a wrongful interference with, and a disturbance of the relations existing between the plaintiff and its employees, doubtless the public interest in the safe, efficient and uninterrupted operation of the plaintiff's railway system might be a consideration of some weight in determining whether an injunction should issue."

Upon the record before me I do not find such conditions to exist. Inducing the breach of promise to work is not involved. It has not been established that violence, threats, fraud or overreaching conduct have been used to induce plaintiff's employees to become members of the Amalgamated Association, nor that other acts have been committed or threatened which would warrant the issuance of a restraining order.

The Court of Appeals has held, ANDREWS, J., writing (*Exchange Bakery & Restaurant, Inc., v. Rifkin*, 245 N. Y. 260), that " The purpose of a labor union to improve the conditions under which its members do their work; to increase their wages; to assist them in other ways may justify what would otherwise be a wrong. *So would an effort to increase its numbers* and to unionize an entire trade or business. It may be as interested in the wages of those not members, * * * as in its own members because of the influence of one upon the other. All engaged in a trade are affected by the prevailing rate of wages. All, by the principle of collective bargaining. * * * Where the end or the means are unlawful and the damage has already been done the remedy is given by a criminal prosecution or by a recovery of damages at law. Equity is to be invoked only to give protection for the future. To prevent repeated violations, threatened or probable, of the complainant's property rights, an injunction may be granted."

Plaintiff in support of its contention lays stress upon decisions in *Hitchman Coal & Coke Co. v. Mitchell* (245 U. S. 229) and *International Organization, United Mine Workers of America v. Red Jacket Consolidated Coal & Coke Co.* ([C. C. A.] 18 F. [2d] 839). Upon the argument of this motion it was conceded, however, that these decisions were called to the attention of the Court of Appeals in the *Lavin* case and that court stated: " Both parties have upon this appeal cited decisions, most of them from other jurisdictions, which they urge support certain of their contentions. Some of the opinions in these cases are of great weight because of the strength of the reasoning and the authority of the tribunals. The law that

should be applied in this jurisdiction to the circumstances disclosed by the record has been established by repeated decisions of this court."

The court at Special Term is bound to follow the decisions of the Court of Appeals. In the *Lavin* case the Court of Appeals held: " The defendants have the right to induce the plaintiff's employees to join the Amalgamated Association though that may involve termination of their employment. They are under no obligation to the plaintiff to inform it that some of the plaintiff's employees are joining the union, so that the plaintiff may exercise its choice of retaining or discharging the new members. They are not under any obligation even to urge or compel their new members to give their employer such information. The defendants are acting for themselves or the Amalgamated Association, and in taking lawful action to advance the interests of the members of that union they are under no affirmative duty of protecting the privileges or even rights of the plaintiff."

Plaintiff has not established that defendants urged its employees " to conceal from their employer that they are acting contrary to the employer's express wish." Upon the record before me I have reached the conclusion that the intervention of a court of equity at this time is not warranted.

Motion denied.