STILLWELL THEATRE, INC., Plaintiff, *v.* SAM KAPLAN, as President of the International Alliance of Theatrical Stage Employees, etc., Union, Defendant.

Supreme Court, Kings County, March 6, 1931.

*Joseph A. Teperson*, for the plaintiffs.

*Joseph A. Teperson* [*Harry Marks* of counsel], for the plaintiffs Stillwell Theatre and Windsor Circuit Corporation.

*Phillips, Mahoney, Leibell & Fielding*, for the defendant.

LEWIS, J. The Stillwell Theatre, Inc., operates the Stillwell Theatre, the Windsor Circuit Corporation, the Windsor Theatre, the Rosekay Amusement Corporation and the Rugby Theatre. The Stillwell and Rugby Theatres employed members of the defendant union as moving picture operators to August 31, 1930, pursuant to a contract between them. Prior to the expiration of these contracts and in the latter part of August, 1930, the owners of the Stillwell and Rugby Theatres entered into contracts with a rival union of the defendants, pursuant to which contract none but members of the rival union could be employed at those theatres. This latter contract became effective on September 1, 1930, and continues until August 31, 1931. The Windsor Theatre was opened in February, 1930, and the owners thereof made a similar contract with the rival union, which expired August 31, 1930, and prior to its expiration the contract was renewed and by its terms continues in force until August 31, 1931. In the early part of September, 1930, the defendant union began picketing the streets in front of the three theatres, the pickets carrying signs in English and in Hebrew. Crowds were caused to collect. It is undisputed that the contracts between the Stillwell Theatre and the Rugby Theatre with the defendants expired on August 31, 1930. These contracts were fully performed.

The right of these plaintiffs to enter into contracts with the rival union cannot be questioned. Freedom of contract within the limitations prescribed by law and public policy is a constitutional right, recognized and enforced as well in labor disputes as in other controversies. The rights of employers and employees in this respect are mutual. (*Interborough Rapid Transit Co.* v. *Lavin,* 247 N. Y. 65; *Schlesinger* v. *Quinto,* 201 App. Div. 487.) The acts of the defendant union must be viewed with regard to the

existence of the contracts between the plaintiffs and the rival union. These contracts were definite in terms and satisfactory to the parties, and knowledge of these contracts and their terms was had by the defendant union. The motive for the picketing was to effect a breach of the contracts with the rival union, which contracts will not expire until August 31, 1931, and to injure plaintiffs in their business by inducing the public not to patronize their theatres. Picketing under such circumstances is illegal and has been generally condemned by the courts. An intent to injure which culminates in causing a breach of a valid contract gives rise to a cause of action for damages, and, where damages will be inadequate, equity will grant injunctive relief (*Schlesinger* v. *Quinto, supra; Posner Co.* v. *Jackson,* 223 N. Y. 325; *Lamb* v. *Cheney & Son,* 227 id. 418; *Goldman* v. *Cohen,* 222 App. Div. 631), and the general principle asserted in *Lamb* v. *Cheney & Son,* and *Posner Co.* v. *Jackson* is approved by the court in *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin* (245 N. Y. at p. 267). (See, also, *Hornstein* v. *Podwitz,* 254 N. Y. 443.) The picketing, if permitted to continue, may, and certainly is intended to, induce a breach of existing agreements, and will result in diminution of plaintiffs' business. The injury so occasioned cannot be adequately redressed by an award of damages.

Even if it be conceded that, notwithstanding the injury to plaintiffs, the ultimate result will be beneficial to labor, we are met with the rule that lawful ends must be accomplished by lawful means. (*Interborough Rapid Transit Co.* v. *Lavin,* 247 N. Y. 65; *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 id. 260, 267.) The contention that the efforts of the defendant to persuade the operators to end the contracts of employment is not necessarily an illegal act, does not find support in *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin* and *Interborough Rapid Transit Co.* v. *Lavin (supra).* These latter cases do not sustain the claim that a labor union may induce the breach of a valid contract and justify its action by the assertion of a beneficent intent thereby to better labor conditions. In both of these cases the hiring was at will, terminable by either party at any time. These decisions have reference to contracts lawfully terminable at will and not to termination by breach. This conclusion is emphasized by the language in *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* that "where a specific contract of employment for a definite time exists another may not intentionally, without just cause or excuse, interfere therewith." Whether the defendant or the rival union is the better for labor cannot be determined by the court. So to do would be placing the stamp of judicial approval upon the one, to the exclusion of the other. Nor

may the court assume the prerogative of prescribing the standards by which labor conditions are to be judged. The plaintiffs' position is most unfortunate. Performance of the existing contracts with the rival union and refusal of the demands of the defendant will result in the continued picketing by the defendant, with the incidental loss to business. Yielding to the wishes of the defendant will result in the breach of the contracts with the rival union, thereby giving rise to actions for breach of contract, with the possibility of picketing by the rival union. Such a condition should not be permitted to exist.

The plaintiffs are entitled to judgment perpetually enjoining and restraining the defendants from picketing in front of, or in the immediate vicinity of, plaintiffs' theatres during the continuance of the existing contracts with the rival union.