ESCO OPERATING CORPORATION and Others, Plaintiffs, *v.* SAM KAPLAN and Others, Defendants.

Supreme Court, Kings County, April 18, 1932.

*Joseph A. Teperson*, for the plaintiffs.

*Conroy & Hardy* and *Deiches, Kaufman & Bernson* [*Gardiner Conroy* and *Maurice Deiches* of counsel], for the defendant Sam Kaplan.

*Ornstein & Silverman* [*Theodore Ornstein* of counsel], for the defendant Lillian Weisman.

*Lowe & Dougherty* [*John Z. Lowe* of counsel], for the defendant City Amusement Corporation.

*Charles H. Kelby* of counsel, for all defendants.

STEINBRINK, J. The plaintiffs' affiliated corporations own and operate sixteen moving picture theatres in the city of New York. All of these theatres had entered into contracts in October, 1931, with the Empire State Motion Picture Operators Union, Inc. (hereinafter referred to as Empire Union), which do not expire until January, 1937, and under the terms of which plaintiffs were obligated to employ as moving picture operators only members of the Empire Union. This union absorbed or assimilated an earlier organization known as the Brotherhood of Motion Picture Projectionists. During the summer of 1931 representatives of the International Alliance of Theatrical Stage Employees, etc. (hereinafter referred to as Local 306), negotiated with plaintiffs for the purpose of securing contracts providing for the employment by plaintiffs of members of Local 306. With the failure of the negotiations, Local 306,

aided by the Woman's Union Label Club of the Bronx and the City Amusement Corporation, embarked upon a course of conduct which plaintiffs now seek to restrain by injunction. At the outset it should be observed that there is now presented for consideration, not the age-old struggle between labor and capital, but rather a battle for supremacy between Local 306 and the Empire Union. Plaintiffs, standing in the direct line of fire, are bearing the brunt of the struggle to which they are not parties. What Local 306 and its codefendants have been doing must be viewed in the light of the contracts between plaintiffs and the Empire Union, of the existence of which Local 306 had full knowledge. The right of the plaintiffs to enter into these contracts, which are being performed to the complete satisfaction of the contracting parties, cannot be questioned. (*Stillwell Theatre, Inc.,* v. *Kaplan,* 140 Misc. 142; affd., 235 App. Div. 738\*.) But Local 306 seeks to justify its acts as being done to increase its membership and by thus extending its sphere of influence to improve conditions under which motion picture operators work, to raise their wages and to achieve other wholesome results that would flow from effective collective bargaining. In assigning these as the ends it seeks to accomplish, Local 306 proceeds upon the assumption that the existing contracts do not merit judicial recognition, for the reason that it is urged that the Empire Union is not a *bona fide* labor organization, but a mere creature of plaintiffs used for the sole purpose of preventing the unionization of their theatres by Local 306. If this were established at the trial, a court might be well justified in holding that the end sought to be accomplished is lawful. The Empire Union has been in existence since 1925, and has been judicially recognized as a *bona fide* labor union. (*Stillwell Theatre, Inc.,* v. *Kaplan, supra.*) The evidence before me fails to support the contention that the Empire Union is a mere pseudo union manned by figureheads acting for plaintiffs. Nor does the evidence afford a basis for an honest complaint against either the wage scale paid by plaintiffs to Empire Union members or the conditions under which these men work. Since I find that the Empire Union is not a sham labor organization, I am left no choice but to conclude that the main motive for the methods here employed by Local 306 is not to improve the conditions under which motion picture operators work, but to effect and coerce a breach of plaintiffs' existing contracts with the Empire Union, for only in the event of such breach can Local 306 unionize plaintiffs' theatres. If this end which Local 306 seeks to accomplish were clothed with judicial sanction and plaintiffs compelled to accede to the demands of Local 306 and repudiate their contracts with the Empire Union, they would find themselves in the anomalous position where they must suffer the issuance of

---

* Revd., 259 N. Y. 405.

an injunction restraining further violations of these contracts. (*Schlesinger* v. *Quinto*, 201 App. Div. 487; *Goldman* v. *Cohen*, 222 id. 631.) Being thus compelled to perform the contracts they would subject themselves to the destructive tactics now employed by Local 306 and be exposed to the danger of being ground between the upper and nether millstone. It is into this annihilating dilemma that plaintiffs are plunged. Under these circumstances and to accomplish the ends here sought resort to picketing has been condemned as illegal. (*Roosevelt Amusement Corp.* v. *Empire State Motion Picture Operators Union, Inc.*, 231 App. Div. 872; *Unity Amusement Co., Inc.*, v. *Empire State Motion Picture Operators Union, Inc.*, Id. 873.)

Even though it be found that the end which Local 306 seeks to achieve is lawful (which is already negatived), the plaintiffs are nevertheless entitled to relief. It is well settled that, if Local 306 believes in good faith that the Empire Union is inimical to the interests of organized labor, then it may by lawful means publicize this fact to the end that it may realize its true function as an agency for the creation of a common bargaining level for employers and employees. (*Nann* v. *Raimist*, 255 N. Y. 307; *Exchange Bakery & Restaurant* v. *Rifkin*, 245 id. 260; *Bossert* v. *Dhuy*, 221 id. 342.) Such practice is proper even though no strike exists (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin, supra*), and even though the employer against whom it is directed may thereby suffer incidental annoyance or damage. (*Bossert* v. *Dhuy, supra.*) When, however, the activities of the union transcend the bounds of propriety, and lawful conduct, courts have not hesitated to afford relief. (*Nann* v. *Raimist, supra.*) In the case at bar there is convincing evidence that Local 306, with the active co-operation of the Woman's Union Label Club of the Bronx and the codefendant, City Amusement Corporation, which latter corporation is admittedly the creature of Local 306, sponsored outdoor meetings in the immediate vicinity of many of the plaintiffs' theatres, at which representatives of the defendants pretended to educate their hearers in the doctrine to which the defendant Local 306 is committed — that of the closed shop, closed to every one except members of Local 306 — and in this connection the public was falsely advised that there was a strike against plaintiffs' theatres; that scabs were employed there; that while the speakers were not permitted to tell the public not to go into or patronize these theatres, nevertheless they (the speakers) would not permit members of their families to go because of the dangers of fire, panic, the presence of gangsters, etc. The defendants' pickets, women and men, sometimes as many as ten in number in front of one theatre, would cause unusual crowds to gather, blocking the door-

ways and streets in front of these theatres, and at times these pickets accosted prospective patrons and warned them not to go into these theatres because of the strike against them. These pickets carried signs, the wording and the size and the arrangement of the letters of which are such as to be misleading and were so intended. As an incident to this campaign free moving picture shows were held in the vicinity of plaintiffs' theatres, parades with large numbers of women and children were organized and fostered by the defendants, and undoubtedly to win their good will they were lured by gifts and souvenirs of various types, all bearing the imprint or labels of Local 306. Nor is this all. Bus lines were operated from points in the vicinity or immediately adjoining and directly opposite plaintiffs' theatres, carrying signs indicating that these buses would carry people free of charge to and from theatres where members of Local 306 were employed. Automobiles with loud-speaking mechanism were employed to make the rounds of the streets in and about plaintiffs' theatres; these loud speakers blaring forth in stentorian tones admonitions and warnings similar in their import to those of the speakers at the street corner meetings. Copies of various issues of the New York *Labor World* were widely distributed by representatives of the defendants in the stores and homes and to persons in the vicinity of many of the plaintiffs' theatres. While disclaiming responsibility for what was published, counsel for the defendants admitted that the distribution of these papers was by representatives of the defendants. Defendants' brief concedes " that some of the vapid statements in the *Labor World* have not been established as the truth." Examination shows that these papers contain most virulent attacks and vituperous statements against the plaintiffs, while at the same time extolling the virtues of Local 306, its president and officers.

If these acts or combinations, which have for their purpose the instilling of fear into the hearts and minds of the public which patronizes plaintiffs' theatres, or the coercing of patrons or prospective patrons into withholding their patronage from plaintiffs' theatres, cannot be restrained, then the arm of equity is indeed palsied. The courts of this and sister States recognize that intangible property is as much the subject of protection by injunction as tangible property. The applicable rule has been well stated by Mr. Justice BLACKMAR in *Newton Co.* v. *Erickson* (70 Misc. 291, 294, 296), where he said: " There is no branch of the law better settled than the jurisdiction of equity to protect the good will of a business against trespass and invasion by its writ of injunction." Any other holding would mean that " you must not use violence toward persons or tangible property, but you may cripple your

adversary by destroying his good will and business connections." And further (70 Misc. 298): " Violence against persons and tangible property will not be permitted, neither will attacks on intangible property rights, like business, good will, or trade, be permitted. One cardinal principle must be borne in mind, that any element of illegality essential to a scheme or combination makes the whole illegal." And in *Underhill* v. *Murphy* (117 Ky. 640, 645; 78 S. W. 482, 483) the court observed that " when a man has, by years of toil and fair dealing with his customers, built up a valuable business and good will, he is as much entitled to protection * * * in this species of property as in the home that shelters him, or the coat that protects him from the winter's cold." The geographical extent of the good will of plaintiffs' business is not limited to the sidewalks under the marquees of their various theatres. It permeates the entire neighborhood in which the theatres are located. The case at bar involves more than a mere apprehension of injuries. Already the defendants have succeeded in destroying much of the patronage and good will heretofore enjoyed by plaintiffs, and it is only a matter of time when, if the conduct of the defendants is to continue, this good will will entirely disappear and the plaintiffs be compelled to retire from the cross-fire of Local 306 and the Empire Union. All that will remain will be plaintiffs' deserted theatres as evidence of the battle in the ranks of labor itself.

I do not subscribe to the oft-repeated contention and argument that the use of the word " violence " in so-called labor disputes is limited always to physical contact or injury. A blackjack applied to a worker's skull may in the long run be less serious than picketing conducted with misleading signs, false statements and publicity, veiled threats by words and acts, and insidious propaganda. The scalp wound may be healed through the surgeon's art, but at a time of economic suffering, when credit and good name are more sensitive to shock than the nervous system, courts must still give some consideration to what former Chief Judge CARDOZO speaks of as " The economic and social needs to which a decision will respond." In this record there is the repeated interjection of the relative merits of the two unions. I do not purpose to pass upon them. The plaintiffs, however, are not to be penalized for making a choice between the two. (*Aberon Bakery Co.* v. *Raimist*, 141 Misc. 774, 777; *Stillwell Theatre Co.* v. *Kaplan*, 140 id. 142, 143, 144.) None will gainsay the fact that in many branches of industry the honest efforts of honest leaders of labor have been crowned with blessings for the working class, but these have frequently been lost through the activities of misguided leadership. Too often employers and union officials are blinded to the complexity of our industrial system and

to the importance, especially in times like these, to make approach each to the other in a spirit of good will. On the one hand, that capital may earn a fair return and keep industry alive and functioning so that labor may be employed, and, on the other hand, that thus employed labor may have a fair return for its effort earned under proper working conditions.· For some years past, unions frequently with commendable zeal compelled the employer to share profits with those whose labor had produced them through increases in the wage scale. Now, with living costs rapidly declining, the sensible leaders of labor will recognize the need of facing new conditions, adjusting labor to them and seeking the median line where labor and capital may still join hands. Growing out of conditions similar in many respects to those presented in the instant case, the defendant Local 306 has been before the courts of this department not less than ten times. Each time its actions, because wrongful, have been enjoined. I have studied the available records in each of these cases, and in no one of them do I find the facts as aggravated as those disclosed by the evidence in this case.

For the reasons set forth, there will be judgment for the plaintiffs. Injunction will issue in accordance herewith. Settle findings on notice.